UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

    -  against  -

JORGE ESTRADA-TEPAL, RICARDO
ESTRADA-TEPAL and VICTOR LEONEL
ESTRADA-TEPAL,

              Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CR-105 (MKB)

MARGO K. BRODIE, United States District Judge:

Defendants Jorge Estrada-Tepal, Ricardo Estrada-Tepal and Victor Leonel Estrada-Tepal are charged with sex trafficking and sex trafficking conspiracy, in violation of Title 18, United States Code, Sections 1591(a)(1)–(2), 1594(c), conspiracy to transport illegal aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), and transportation of illegal aliens for financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii). Currently before the Court is Defendant Ricardo Estrada-Tepal's ("Defendant") motion to dismiss all counts brought pursuant to 18 U.S.C. § 1591 on the basis that the law is unconstitutionally overbroad.[1] For the reasons discussed below, the Court finds that 18 U.S.C. § 1591 is not unconstitutionally overbroad, and therefore denies Defendant's motion to dismiss all counts brought pursuant to that statute.

---

[1] Jorge Estrada-Tepal joined this motion by letter dated August 8, 2014. (Docket Entry No. 49.)

I. **Background**

    a. **The Estrada-Tepal trafficking organization**

In approximately March 2013, Homeland Security Investigations ("HSI") began investigating an extended family known as the "Estrada-Tepal trafficking organization" for sex trafficking activities.[2] (Compl. ¶ 3.) As part of the investigation, HSI interviewed a victim ("Victim #1") of the Estrada-Tepal trafficking organization. (*Id.* ¶ 4.) Victim #1 described the methods by which the Estrada-Tepal trafficking organization engaged in the transportation of women to the United States to work in prostitution and the use of physical violence and threats to force the women to work in prostitution. (*Id.*) HSI determined that the Estrada-Tepal Trafficking organization operated out of one or more locations in Queens, New York. (*Id.*)

Victim #1 met Defendant in Mexico, where they started dating. (*Id.* ¶ 5.) Shortly thereafter, she moved in with Defendant at his home in Puebla, Mexico. (*Id.*) Within a week of moving in, Defendant told Victim #1 that they were going to travel to the United States to work. (*Id.*) Defendant smuggled Victim #1 into the United States on a train. (*Id.*) Victim #1 eventually met with Defendant's brother, Victor Leonel Estrada-Tepal ("Leonel"), in New Jersey on or about August 9, 2011. (*Id.*) Leonel pressured Victim #1 to pay her debt — the price of her smuggling into the United States. (*Id.*) Victim #1 attempted to obtain money from friends and family but Leonel told her that she would have to work as a prostitute to pay the debt. (*Id.*) Victim #1 told Defendant about this demand and Defendant told Victim #1 to listen to Leonel. (*Id.*) Victim #1 was told that if she did not work, her family would pay the price. (*Id.*) In October 2011, Victim #1 decided to run away. (*Id.* ¶ 8.) Defendant called Victim #1 and told her that if she did not return, something was going to happen to her or her family. (*Id.*)

---

[2] These allegations are taken from the Complaint filed on January 31, 2014. (Docket Entry No. 1.)

Victim #2 met Jorge Estrada-Tepal ("Jorge") in Mexico where they began dating. (*Id.* ¶ 11.) Shortly thereafter, Jorge smuggled Victim #2 into the United States where they lived together in Queens, New York. (*Id.*) Jorge initially pressured Victim #2 into working at a bar, and later forced Victim #2 into prostitution. (*Id.* ¶ 12.) Victim #2 worked as a prostitute for approximately four years. (*Id.* ¶ 13.)

In addition, Victim #3 claims that she was asked by a member of the Estrada-Tepal trafficking organization to travel to the United States for work and was later forced into prostitution. (*Id.* ¶ 14.)

On January 30, 2014, HSI agents arrested Defendant, and his brothers, Leonel and Jorge, based on their illegal immigration status. (*Id.* ¶ 25.) Upon arrest, Defendant admitted that he paid approximately $5,500 to have another female victim smuggled into the United States, and after her arrival, she engaged in prostitution. (*Id.*)

## II. Discussion

### a. Overbreadth challenge

Defendant argues that "18 U.S.C. § 1591 is unconstitutionally overbroad on its face because it significantly infringes upon the right to free association guaranteed by the First Amendment . . . ." (Def. Mem. at 17.) The government contends that 18 U.S.C. § 1591 does not substantially burden protected speech. (Gov. Opp'n Mem. at 35.) The Court agrees with the government.

"A law is unconstitutionally overbroad if it punishes a substantial amount of protected free speech, judged in relation to its plainly legitimate sweep." *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 127 n.8 (2d Cir. 2014) (quoting *United States v. Farhane*, 634 F.3d 127, 136 (2d Cir. 2011)); *Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 (2d Cir. 2010); *see also*

3

*Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984) ("There are two quite different ways in which a statute may be considered invalid 'on its face' — either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'"). The Supreme Court has described an overbreadth challenge as "limited" and has noted that its force weakens as the regulated behavior at issue "moves from 'pure speech' toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws . . . ." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *Gospel Missions of Am., a religious corporation v. City of Los Angeles*, 419 F.3d 1042, 1050 (9th Cir. 2005) ("The overbreadth doctrine's concern with chilling protected speech attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct." (alteration and internal quotation marks omitted) (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003))); *United States v. Richards*, No. 13-CR-818, 2014 WL 3765712, at *3 (S.D.N.Y. July 29, 2014) (quoting *Broadrick*, 413 U.S. at 615).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Stevens*, 559 U.S. 460, 474 (2010) (alteration omitted) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). The second step is to determine whether the statute, as construed by the court, "criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297. "[I]n considering facial challenges we must 'vigorously enforce[ ] the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.'" *Adams*, 606 F.3d at 38 (quoting *Williams*, 553 U.S. at 292).

### i. Title 18 U.S.C. § 1591

Defendant asserts that 18 U.S.C. § 1591 is a "criminal prohibition of alarming breadth." (Def. Mem. at 19 (quoting *Stevens*, 559 U.S. at 474).) Specifically, Defendant takes issue with "the lack of a necessary criminal purpose connected to many of the associational actions [18 U.S.C. § 1591] prohibits." (Def. Mem. at 20.) The government appears to not contest Defendant's interpretation of the statute.[3] As set forth below, the Court agrees with Defendant that 18 U.S.C. § 1591 unambiguously covers a broad range of conduct with no requirement that a defendant intend to further any underlying sex trafficking scheme.

In interpreting 18 U.S.C. § 1591, the Court looks to the statute's text "to determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012). "[P]lain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003); *see also Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 155 (2d Cir. 2013) (stating that statutory analysis begins with a "review [of] the statutory text, considering . . . the placement and purpose of those words in the statutory scheme" (quoting *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009)), *cert. dismissed*, 569 U.S. ---, 133 S. Ct. 2823 (2013). The Court finds 18 U.S.C. § 1591 is plain and unambiguous.

Title 18 U.S.C. § 1591 states in pertinent part:

(a) Whoever knowingly—

---

[3] The government argues that 18 U.S.C. § 1591 covers "a core of misconduct — such as the use of beatings, rape, and other violence to compel a sex worker to engage in commercial sex . . . ." (Gov. Opp'n Mem. at 35.) However, the government ostensibly concedes that there may be "a few hypothetical scenarios in which Section 1591 might burden the First Amendment rights of families and support organizations . . . ." (*Id.* at 38.)

> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

18 U.S.C. § 1591.  The plain language of the statute requires only that a person have knowledge that he or she is committing any of the seven prohibited actions enumerated in 18 U.S.C. § 1591(a)(1) and knowledge, or reckless disregard of the fact, that a person subject to any of the prohibited actions will engage in an underage or coerced commercial sex act.  (Def. Mem. at 20); *see also United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (stating the elements of a child sex trafficking under § 1591(a)); *United States v. Myers*, 430 F. App'x 812, 816 (11th Cir. 2011) (same); *see also United States v. Williams*, --- F. App'x ---, 2014 WL 1775869, at *3 (11th Cir. May 5, 2014) ("The *plain language* of [18 U.S.C.] § 1591(a) makes it a crime to knowingly recruit, entice, harbor, transport, provide, obtain, or maintain an individual under the age of eighteen to engage in commercial sex acts, where the defendant either knows the individual is under the age of eighteen, or acts in reckless disregard of whether the individual is under the age of eighteen." (emphasis added)); *United States v. Wilson*, No. 10-CR-60102, 2010 WL 2991561, at *9 (S.D. Fla. July 27, 2010) (dismissing a vagueness challenge to § 1591and finding that "[n]othing about what this statute proscribes is left to the imagination"), *report and recommendation adopted*, No. 10-CR-60102, 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010).

Defendant's constitutional challenge is primarily based on three of the seven actions listed in 18 U.S.C. § 1591(a)(1) — harbors, transports and maintains. He argues that "harbor," "transport" and "maintain" are unambiguous terms, which encompass a variety of innocuous and charitable actions such as sheltering, feeding and clothing[4] individuals known to be engaging in underage or coerced commercial sex acts. (Def. Mem. at 20.) The government offers no narrowing interpretation of these terms.[5] The Court agrees with Defendant and finds that the seven actions listed in 18 U.S.C. § 1591(a)(1) are unambiguous and include within their scope seemingly harmless conduct. Such an interpretation accords with 18 U.S.C. § 1591(a)(1)'s plain language. *See United States v. Jungers*, 702 F.3d 1066, 1069–70 (8th Cir. 2013) (finding the statute unambiguous and noting that it "'criminalizes a broad spectrum' of conduct" (quoting *United States v. Jongewaard*, 567 F.3d 336, 340 (8th Cir. 2009))), *cert. denied*, 559 U.S. ---, 134 S. Ct. 167 (2013). Indeed, expansiveness was a legislative goal in enacting the statute. *See* 22 U.S.C. § 7101, Trafficking Victims Protection Act of 2000, Pub. L. No. 106–386, § 102(a), 114 Stat. 1464 (2000) (codified as amended at 18 U.S.C. § 1589 *et seq.*) ("No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme. Instead, even the most brutal instances of trafficking in the sex industry are often punished under

---

[4] The Second Circuit has arrived at a narrower interpretation of "harboring" in the context of 8 U.S.C. § 1324, which concerns the bringing in and harboring of undocumented individuals. In *Vargas-Cordon*, the Second Circuit held that "[t]he mere act of providing shelter to an alien, when done without intention to help prevent the alien's detection by immigration authorities or police, is . . . not an offense under [8 U.S.C.] § 1324(a)(1)(A)(iii)." *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013). The *Vargas-Cordon* court supported its definition of harboring by noting that the other prohibited actions in 8 U.S.C. § 1324(a)(1)(A)(iii) are "conceals" and "shields from detection," both of which "carry an obvious connotation of secrecy and hiding." *Id.* at 381. Here, the other prohibited actions listed in 18 U.S.C. § 1591(a)(1), unlike those of § 1324(a)(1)(A)(iii), do not connote secrecy or hiding and thus, the reasoning of *Vargas-Cordon* is not immediately applicable.

[5] As already noted, it appears that the government does not refute Defendant's construction of the statute.

laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment."); *United States v. Cook*, No. 10-CR-244, 2013 WL 3039296, at *9 n.1 (W.D. Mo. June 17, 2013) (noting that Congress in 2008 added "maintains" to the list of prohibited actions, which, as argued by the government, supports an intent to broaden the scope of the statute); *see also* Stephen C. Parker & Jonathan T. Skrmetti, *Pimps Down: A Prosecutorial Perspective on Domestic Sex Trafficking*, 43 U. Mem. L. Rev. 1013, 1019 (2013) (describing 18 U.S.C. § 1591 as "broadly criminalizes *any involvement in*, or benefit from, commercial sex acts, where the victim is either a minor or caused to engage in the act through the use 'of force, threats of force, fraud, or coercion'" (emphasis added)); Lindsay Strauss, *Adult Domestic Trafficking and the William Wilberforce Trafficking Victims Protection Reauthorization Act*, 19 Cornell J.L. & Pub. Pol'y 495, 526 (2010) (arguing that the 2008 amendments to the statute "marked a new era in the federal government's campaign against human trafficking because of its emphasis on preventing domestic trafficking, in addition to international trafficking").

Two additional aspects of the statute merit mention. First, as Defendant correctly notes, absent from 18 U.S.C. § 1591(a) is any requirement that an individual have the desire or "criminal purpose" to further sex trafficking; instead, one need only have knowledge, or reckless disregard to the fact, that the victim will be caused to have underage or coerced commercial sex. *See United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (discussing the elements of the statute and, with respect to mens rea, stating that "the statute requires . . . that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution"); *id.* at 336 (Smith, M., *concurring*) (noting that 18 U.S.C. § 1591 "allows for a conviction even where the defendant did not personally use force, fraud, or coercion" so long as he knew it would occur). Second, 18 U.S.C. § 1591 omits any requirement

that the prohibited actions listed under § 1591(a)(1) further — or even directly relate to — any underlying sex trafficking scheme.

Having construed the statute, the Court now determines whether 18 U.S.C. § 1591 substantially burdens protected speech.

### ii. Substantial burden

Freedom of association includes within its ambit the right of "intimate association" and "expressive association." *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984) (discussing these "two distinct senses" of freedom of association); *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 995–96 (2d Cir. 1997) ("The United States Constitution affords protection to two distinct types of association, 'intimate association' and 'expressive association.'" (quoting *Roberts*, 468 U.S. at 617–18)). Defendant argues that 18 U.S.C. § 1591 substantially interferes with both types of associational freedoms.[6] Each is discussed below.

---

[6] The Court notes that some Courts of Appeals have held, or at least suggested, that the right to intimate association is based in the Fourteenth Amendment, rather than the First Amendment. *See Griffin v. Strong*, 983 F.2d 1544, 1546–47 (10th Cir. 1993) ("The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association."); *Swank v. Smart*, 898 F.2d 1247, 1251–52 (7th Cir. 1990) (categorizing the "'right of association' in a nonexpressive sense" as a "substantive right[]" protected under the due process clause); *IDK Inc. v. County of Clark*, 836 F.2d 1185, 1191–93 n.5. (9th Cir. 1988) ("The relationships protected by the [F]ourteenth [A]mendment 'are those that attend the creation and sustenance of a family' and similar 'highly personal relationships.'" (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–19 (1984))).

Whether the right to intimate association finds its home in the First or Fourteenth Amendment becomes important because "[t]he facial overbreadth doctrine is restricted in its application, . . . and is 'not recognized . . . outside the limited context of the First Amendment." *Musser v. Mapes*, 718 F.3d 996, 1001 (8th Cir. 2013) (second alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, it is not clear that an overbreadth challenge based on the right to intimate association is viable. The Second Circuit has yet to rule on this issue. *See Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) ("Under the circumstances, we do not need to decide whether overbreadth attacks apply to alleged infringements of the right to intimate association as they do to First Amendment rights, or whether overbreadth challenges do not apply because, as several circuits have held, the right to intimate association lies not in the First but in the Fourteenth Amendment."); *cf. Corso v.*

### 1.  Intimate Association

Although "the diversity of human relationships necessitate[s] a sliding-scale analysis rather than a bright-line test" with respect to which relationships warrant protection under the United States Constitution, *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 58 (2d Cir. 2014) (quoting *Roberts*, 468 U.S. at 620), "those that attend the creation and sustenance of a family — marriage, childbirth, the raising and education of children, and cohabitation with one's relatives" typify the protected affiliations, *Roberts*, 468 U.S. at 619–20.

Defendant argues that 18 U.S.C. § 1591 impermissibly interferes with familial relationships. (Def. Mem. at 21.)  According to Defendant, 18 U.S.C. § 1591's ban on "harboring" criminalizes the cohabitation of family members when one knows that a family member is an underage or coerced sex worker, the ban on "maintaining" criminalizes the provision of food and clothing and the sharing of finances and property, and the ban on "transportation" crimalizes a "broad category of interaction between people who cohabit or otherwise share their lives with family or close friends." (*Id.* at 21.)  The government contends that any intrusion on these relationships cannot be considered substantial when compared to the legitimate reach of 18 U.S.C. § 1591. (Gov. Opp'n Mem. at 37–39.)  The Court agrees with the government.

Invalidating a law pursuant to the overbreadth doctrine is "strong medicine" to be used "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.  Here, the Court acknowledges that 18 U.S.C. § 1591, as written, could hypothetically criminalize the conduct of a mother who

---

*Fischer*, 983 F. Supp. 2d 320, 330 (S.D.N.Y. 2013) ("It 'has not been authoritatively determined' whether this right to intimate association is implied in the First Amendment or exists as a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment." (quoting *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999))).  For the purposes of this motion, the Court assumes that Defendant may facially challenge 18 U.S.C. § 1591 based on his right to intimate association.

feeds, clothes and drives around her daughter with knowledge that her daughter is or will be a victim to a sex trafficking scheme, but without any intent or desire to further the trafficking scheme. However, this hypothetical compassionate mother, articulated by Defendant, is at the periphery of 18 U.S.C. § 1591's applicability.[7] *See Richards*, 2014 WL 3765712, at *4 (rejecting the defendant's overbreadth challenge against 18 U.S.C. § 1591, in part, because the defendant failed to show "that the sex trafficking statute prohibits a substantial amount of protected speech in relation to its many legitimate applications"). Although a compelling story,

---

[7] In fact, the Court is not aware of an application of 18 U.S.C. § 1591 to anyone other than an individual directly and substantially involved in an underlying sex trafficking scheme. *See, e.g.*, *United States v. Phea*, --- F.3d ---, 2014 WL 2694223 (5th Cir. June 13, 2014) (pimp drove victim to a hotel room, which the victim shared with another women who worked as a prostitute for the pimp); *United States v. Willoughby*, 742 F.3d 229, 232 (6th Cir. 2014) (pimp transported victim to john's home); *United States v. Mozie*, 752 F.3d 1271, 1276 (11th Cir. 2014) (defendant operated his home as a brothel known as the "Boom Boom Room"); *United States v. Britton*, --- F. App'x ---, 2014 WL 2210679 (3d Cir. May 29, 2014) (pimp in prostitution ring); *United States v. Flanders*, 752 F.3d 1317, 1325 (11th Cir. 2014) (co-defendants drugged, raped and videotaped women); *United States v. Anderson*, No. 13-CR-10811, 2014 WL 2085280 (5th Cir. May 20, 2014) (adult accused of having sex with thirteen year old); *United States v. Jones*, 748 F.3d 64, 66 (1st Cir. 2014) (defendant sought sex with young girls online); *United States v. Rivera*, 558 F. App'x 971, 974 (11th Cir. 2014) (defendant organized commercial sex dates for minor victim and travelled from New York to Miami with the victim); *United States v. Robinson*, 702 F.3d 22, 26–29 (2d Cir. 2012) (man convicted of pimping a seventeen year old girl), *cert. denied*, 568 U.S. ---, 133 S. Ct. 1481 (2013); *United States v. McIntyre*, No. 13-CR-361, 2014 WL 3600476, at *2 (E.D. Pa. July 22, 2014) (pimp "who did not hesitate to use force and coercion to maintain discipline with his commercial sex workers"); *United States v. Burchell*, No. 11-CR-00524, 2014 WL 2998598, at *1 (D. Or. June 30, 2014) (discussing a co-defendant who organized group sex, which included a fifteen year old); *United States v. Berrios*, No. 14-CR-334, 2014 WL 3513233, at *1–4 (D.P.R. June 13, 2014) (priest sexually involved with a teenager); *Cooke v. United States*, No. 13-CV-1702, 2014 WL 2118076, at *1 (E.D. Mo. May 21, 2014) (defendant contacted police internet page advertising "young and irresistible"); *United States v. Rojas-Coyotl*, No. 13-CR-0128, 2014 WL 1908674, at *2 (N.D. Ga. May 13, 2014) (defendants encouraged young women from Mexico and Guatemala to come to the United States and then forced the women into prostitution); *United States v. Gemma*, No. 12-CR-10155, 2014 WL 1654133, at *2 (D. Mass. Apr. 25, 2014) (defendant had posted online advertisements for sex with a young woman); *United States v. Blake*, No. 13-CR-80054, 2014 WL 1764679 (S.D. Fla. Mar. 25, 2014) (defendants employed underage sex workers); *United States v. Mack*, 298 F.R.D. 349, 350 (N.D. Ohio 2014) (defendant instructed females to engage in commercial sex to pay drug debts).

Defendant does not convince the Court that 18 U.S.C. § 1591's potential interference with intimate association rights is substantial either in an absolute sense or relative to its legitimate scope.

### 2. Expressive Association

Defendant also argues that 18 U.S.C. § 1591 chills the actions of shelters and support organizations that seek to provide support to sex workers. (Def. Mem. at 21–22.) Defendant further argues that such organizations "are often rooted in religious, political, or social beliefs that are protected under the First Amendment." (*Id.* at 22.)

The First Amendment includes the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000); *see also Sanitation & Recycling Indus.*, 107 F.3d at 996 (stating that expressive association "protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances"). The Court assumes, for purposes of this motion, that 18 U.S.C. § 1591 may, hypothetically, be applied to circumscribe the expressive association rights of "hospitals, counseling services and soup kitchens," as argued by Defendant. (Def. Mem. at 27.) However, the Court is not persuaded that 18 U.S.C. § 1591 substantially burdens expressive association rights. Any possible infringement upon the expressive association of hospitals, counseling services and soup kitchens working with known victims of sex trafficking is indirect and incidental to the plainly legitimate scope of 18 U.S.C. § 1591 which properly seeks to eliminate the "largest manifestation of slavery today." *See* 22 U.S.C. § 7101, Trafficking Victims Protection Act of 2000, Pub. L. No. 106–386, § 102(b)(1), 114 Stat.

1464 (2000) (codified as amended at 18 U.S.C. § 1589 *et seq.*)  Therefore, Defendant's overbreadth challenge is denied.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss all counts brought pursuant to 18 U.S.C. § 1591.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 29, 2014
       Brooklyn, New York